IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NOCD, INC., a Delaware Corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2024-cv-03820 |
| | ) | Hon. Franklin U. Valderrama |
| JEREMY A. KREYLING, an individual, | ) | |
| | ) | |
| Defendant. | ) | |

**JEREMY KREYLING'S MOTION TO DISMISS COMPLAINT WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(B)(6) AND THE CITIZEN PARTICIPATION ACT**

Defendant Jeremy Kreyling ("Kreyling"), by and through the undersigned counsel, respectfully moves to dismiss the complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and the Citizen Participation Act, 735 ILCS 110/15 ("ICPA"). In support of his motion, Kreyling states as follows:

**INTRODUCTION**

This case is about a lost password. As anyone who has used a computer in the past decade knows, it is easier to reset a lost password than file a lawsuit. As demonstrated below, this case is utterly frivolous and was filed by the Plaintiff to retaliate against Mr. Kreyling because he tried to recover wages owed to him.

Kreyling worked for Plaintiff NOCD, Inc. ("Plaintiff" or "NOCD") from May 2021 until April 2023 in the Commonwealth of Pennsylvania. When his employment ended, Plaintiff owed Kreyling outstanding wages and/or other compensation covered by the Pennsylvania Wage Payment and Collection Law ("PWPCL"). When Plaintiff refused to pay Kreyling the compensation it owed him, he retained counsel and eventually was forced to file a lawsuit in

Pennsylvania for Plaintiff's violation of the Pennsylvania Wage Payment and Collection Law in June 2023. Exhibit 1 (PA Complaint).

In response to Kreyling seeking compensation that Plaintiff owed him, Plaintiff sued Kreyling in Illinois and essentially accused him of stealing Plaintiff's property. Plaintiff's allegations are solely based on the false premise that Plaintiff cannot access Kreyling's work laptop because he has not disclosed the password for the computer, which Kreyling willingly returned. *See* Exhibit 2 (Kreyling Declaration). Completely absent from Plaintiff's complaint are any allegations that Kreyling accessed or took any of its contents, or any specific allegations that it has suffered any actual injury--or any allegation that it even tried to reset the password.

It appears Plaintiff did not even try to reset the password before filing this retaliatory lawsuit. To avoid litigating this case, Kreyling's counsel emailed Plaintiff's counsel on May 17, 2024 and asked: "**Did NOCD ever try resetting the computer's password or otherwise have one of the administrators (or someone else) access the computer**?" (Exhibit 3). That same day, NOCD's counsel said he would ask NOCD's CEO whether it tried to reset or access the computer and acknowledged he "anticipate[d] that Judge Valderrama will" want to know this information too. *Id.* Despite Mr. Kreyling's counsel following up, NOCD's counsel did not respond to Kreyling's counsel after the May 20 call. *Id.*

Contrary to the allegations in the Complaint, it is Plaintiff engaging in wholesale wrongdoing. Given the at best trivial and, at worst, false pleadings in this matter, Plaintiff clearly was motivated to file this suit because of Kreyling asserting his legal rights to unpaid compensation. As described below, Plaintiff's Complaint meets the definition of a Strategic Lawsuit Against Public Participation ("SLAPP") in derogation of the ICPA, 735 ILCS 110/0.01, *et seq*. and this Court must grant Kreyling the relief offered by that statute. Furthermore, even if

2

this was not the case, the Complaint would still be subject to dismissal under Fed. R. Civ. P. 12(b)(6).

## RELEVANT FACTS AND ALLEGATIONS OF THE COMPLAINT

NOCD is a mental health services company based out of Chicago, Illinois specializing in the treatment of Obsessive Compulsive Disorder. Doc. 1-1 ¶¶ 1-2. NOCD offers therapy through live video sessions and operates in all fifty states in the United States and internationally. *Id.* ¶ 8. Kreyling worked for NOCD from May 2021 to April 2023. *Id.* ¶¶ 10, 20. During Kreyling's employment, he signed a Confidentiality Agreement. *Id.* ¶ 11; Ex. A to Complaint. The Confidentiality Agreement stated that certain information was defined as "Confidential Documents," that NOCD retained ownership of Confidential Documents, and that employees were to return Confidential Documents after their employment ended. *Id.* ¶¶ 12-13.

During his employment, NOCD issued Kreyling a laptop computer to use to do his job. *Id.* ¶ 14. The Complaint alleges that Confidential Documents were created and/or existed on the NOCD laptop issued to Kreyling. *Id.* ¶ 15-17. When NOCD issued Kreyling the laptop, it had a password established. Ex. 2 ¶¶ 3-4. Kreyling was instructed to reset the password and he did so. *Id.*

NOCD retained administrative access to Kreyling's laptop regardless of Kreyling's individually created password. Ex. 2 ¶ 5. For example, NOCD could lock Kreyling and other employees out of their laptops at any time, including if the laptop was lost. Ex. 2 ¶¶ 5-7; *see also https://workspace.google.com/products/admin/endpoint/*. NOCD retaining its own independent access to his and other employees' laptops was a requirement to receive security certifications to do business with health plans and provider groups. Ex. 2 ¶ 6.

3

Kreyling's employment with NOCD ended in April 2023. Doc. 1-1 ¶ 20. NOCD did not contact Kreyling about how to return the laptop until August 2023, shortly after he filed his Pennsylvania wage lawsuit. Ex. 1; Doc. 1-1 ¶ 23. Also in August 2023, once Kreyling had instructions on how to return the laptop, he returned it without having accessed it or used it. Doc. 1-1 ¶¶ 25-26; Ex. 2 ¶¶ 8-9. As noted above, despite Kreyling's understanding that NOCD could access the laptop, it insisted that it needed Kreyling's username and password to access it. *Id.* ¶ 26-33. In August or September 2023, Kreyling's counsel in his Pennsylvania wage lawsuit against NOCD notified NOCD's Counsel that Kreyling did not recall the username and/or password. On March 23, 2024, with Kreyling's wage lawsuit still ongoing and at the same time the first deposition in that case was occurring, NOCD filed this case against Kreyling. Doc. 1-1; Ex. 2 ¶ 10.

## ARGUMENT

Plaintiff's lawsuit against Kreyling constitutes a SLAPP Suit that must be dismissed with an award of attorneys' fees and costs to Kreyling for defending and disposing of the case. Alternatively, this Court should dismiss Plaintiff's case for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

    I.       **Plaintiff's Complaint is a SLAPP and Must be Dismissed with Prejudice**

          a.    **Definitions and Procedures to Address Strategic Lawsuits Against Public Participation**

A "SLAPP" (Strategic Lawsuit Against Public Participation) is litigation aimed at preventing citizens from exercising their political rights or punishing those who do so by using the threat of money damages or extensive legal fees to silence citizen participation. *Wright Development Group, LLC v. Walsh*, 238 Ill.2d 620, 630 (2010). A lawsuit is a SLAPP and

4

subject to dismissal under the ICPA, 735 ILCS 110/0.01, *et seq.*, when the defendant shows that: (1) his or her acts were in furtherance of the right to petition, speak, associate or otherwise participate in government; (2) the plaintiff's claims are solely based on, related to, or in response to the defendants' "acts in furtherance" and (3) the plaintiff fails to produce clear and convincing evidence that the defendants' acts were not genuinely aimed at solely procuring favorable government action. *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 34. The ICPA protects defendants from "meritless, retaliatory" suits. *Sandholm v. Kueckler,* 962 N.E.2d 418 (Ill. 2012).

Filing a claim for unpaid wages, which Kreyling did against Plaintiffs prior to this lawsuit, is an act in furtherance of the right to petition or participate in government and satisfies the first element of establishing a SLAPP. *Hytel Grp., Inc. v. Butler*, 938 N.E.2d 542, 551 (2010).

"Retaliatory intent may be inferred when a claim lacking merit is filed shortly after the exercise of protected rights." *Id.* at 555. Courts may also infer retaliatory intent when the Plaintiff seeks high damages that are not supported by the facts alleged because they are intended to strike fear into the defendant rather than being a good-faith estimate of the extent of the injury sustained. *Id.* at 556. A suit filed long after it became apparent and then claims the harm is exigent may also be inferred as retaliatory. *Stein v. Krislov*, 2013 Ill. App. 113806 (Ill. App. Ct. 2013). Similarly, a suit that seeks minor or speculative damages is also evidence of a retaliatory motive. *Id.*

The ICPA provisions at issue here are substantive law and are thus applicable in federal court. *Chi v. Loyola Univ. Med. Ctr.,* 787 F. Supp. 2d 797, 808 (N.D. Ill. 2011); *but see Intercon Sols., Inc. v. Basel Action Network,* 969 F. Supp. 2d 1026, 1041 (N.D. Ill. 2013), aff'd on other grounds, 791 F.3d 729 (7th Cir. 2015) (involving application of WA anti-SLAPP law which WA

5

found unconstitutional). Upon receipt of motion to dismiss based on the ICPA, the Court must hold a hearing and decide the motion within 90 days. 735 ILCS 110/20(a). Discovery shall be suspended unless there is good cause shown. 735 ILCS 110/20(b). If the movant's motion is granted, the Court shall award reasonable attorneys' fees incurred in connection with the motion. 735 ILCS 110/25.

### b. Plaintiff's Lawsuit Against Kreyling Meets the Definition of a SLAPP Suit.

In June 2023, Kreyling filed suit against Plaintiff to recover unpaid wages or other compensation. Kreyling's suit is conduct protected by the ICPA. *Hytel,* 938 N.E.2d 551. As discussed in further detail in Section II below, Plaintiff's claims lack merit. Considering the meritless nature of the Complaint in connection with the surrounding circumstances, there is no doubt that this case was brought as a SLAPP. The Court should accordingly dismiss the Complaint with prejudice and award Kreyling the attorneys' fees he has been forced to incur.

In addition to the meritless nature of Plaintiff's claims, the damages sought and the timeline of events are highly suspect and are evidence of a retaliatory motive. First, Plaintiff never expressed any concern about Kreyling's return of the company laptop until after Kreyling filed his wage suit against Plaintiff in June 2023, even though Kreyling's employment with Plaintiff ended in early April 2023. Doc. 1-1 ¶ 20; Doc. 1-1 Ex. B (original email about return of laptop occurred in August 2023). In other words, once Kreyling filed the wage suit, Plaintiff NOCD started looking for ways to strike back at Kreyling.

Shortly after Plaintiff first provided instructions to Kreyling on how to return the laptop, he did so in August 2023. *Id.* Thereafter, Plaintiff requested Kreyling's username and password from Kreyling's wage attorney even though, to the best of Kreyling's knowledge, it is likely that Plaintiff could access the laptop with administrative credentials even without his username and

password. Ex. 2 ¶¶ 5-9 (Plaintiff also did not remember the username/password after such a long period of non-use of the laptop). In September 2023, Plaintiff threatened to sue Kreyling if he did not provide the username and password. Doc. 1-1, Ex. B. Puzzlingly, Plaintiff waited another six months before actually filing suit, at which time Plaintiff claimed ongoing harm and sought exigent relief. Doc. 1-1.

The contradiction between Plaintiff's claim that it is suffering "irreparable harm" because of Kreyling, yet it waited almost one year from the time his employment ended to file suit over the laptop is exactly the kind of evidence courts have used to infer a retaliatory motive. *See supra.* In addition, Plaintiff's lawsuit corresponded closely in time with the first deposition in Kreyling's wage suit. Ex. 2 ¶ 10 (first deposition subpoena served 2/9/2024; deposition scheduled for 3/22/2024; this suit filed 3/20/2024 and served 4/13/2024). The proximity of this suit with the pivotal and more burdensome steps in Kreyling wage case provide additional evidence this suit was filed to discourage Kreyling's wage case.

The damages Plaintiff seeks against Kreyling also reflect its retaliatory motive. Plaintiff's complaint decries ongoing irreparable harm and ongoing damages, language far outpacing the underlying facts, and which should be interpreted as an attempt to intimidate Kreyling. In addition, though no specific monetary amount was set out in the Complaint, Plaintiff has not disputed that it seeks over $75,000 in connection with removal to this Court and seeks exemplary damages, even though it has failed to plead any facts about how or why it has been harmed by Plaintiff's alleged misconduct. *See infra.* Sec. II. In the absence of any articulable harm, Plaintiff's claims are disproportionate and retaliatory. *See Goral*, 2014 IL App (1st) 133236, ¶ 56 (claim for compensatory damages in excess of $50,000 and unspecified amount of punitive damages was retaliatory).

Therefore, unless Plaintiff can present clear and convincing evidence that Kreyling's actions were taken for any reason besides pursuing her protected activities, the Court should conclude that this matter was brought in violation of the ICPA. See *Wright Dev. Corp.*, 238 Ill.2d at 636.

## II. Plaintiff's Complaint Fails to State the Alleged Claims

In addition, each of Plaintiff's six counts fails to adequately plead a claim. This Court, therefore, may also dismiss Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Rule 12(b)(6) allows for dismissal of a plaintiff's complaint when it fails to sufficiently state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under applicable notice-pleading standards, a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2). Although a complaint need not provide detailed factual allegations, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 355 U.S. at 555. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). A claim is facially viable "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

8

### a. Declaratory Judgment (Count I)

To obtain a declaratory judgment, a "case of actual controversy" must exist between the parties. 28 U.S.C. § 2201. "Just like suits for every other type of remedy, declaratory judgment actions must satisfy Article III's case-or-controversy requirement. *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). Such a dispute must be "real and substantial." *Id.* at 2115-16. The determination of a case or controversy is made as of the time the court is to act. *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1382 (10th Cir. 2011) (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2757, at 495-96 (3d ed. 1998) ("The presence of a controversy must be measured at the time the court acts. It is not enough that there may have been a controversy when the action was commenced if subsequent events have put an end to the controversy. . .").

Plaintiff's declaratory judgment action is in part based on Kreyling's alleged failure to return the company laptop. Doc. 1-1 ¶ 39. But Kreyling long ago returned the laptop to Plaintiff. *Id.* ¶ 26. As such, Plaintiff has not pleaded any ongoing case or controversy regarding the return of the laptop. The remainder of Count I involves Plaintiff's claim that it needs Kreyling's former username and password to access the laptop. However, Plaintiff failed to plead any facts explaining why it plausibly cannot access the laptop as the laptop's owner and administrator, what if any information it needs from the laptop to continue its business operations that it cannot obtain elsewhere, or that Plaintiff has suffered any tangible harm from not accessing the laptop. Doc. 1-1; *see also* Ex. 2 ¶ 4-9. Without such facts, there is not a plausible ongoing case or controversy pleaded and Count I must be dismissed.

### b. Specific Performance (Count II)

To establish a cause of action for specific performance, the plaintiff must allege and prove the following elements: (1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract, or proof that the plaintiff is ready, willing, and able to perform the contract; and (3) the failure or refusal of the defendant to perform his part of the contract." *Hoxha v. LaSalle National Bank*, 365 Ill. App. 3d 80, 85 (2006).

Assuming *arguendo* the Confidentiality Agreement (Ex. A to Complaint) is a valid and enforceable contract, there is nothing specifically in the Agreement that Kreyling has not performed. He returned the laptop in August 2023 and there are no other specific duties assigned to Kreyling on the face of the Agreement. Doc. 1-1 ¶ 26. For example, it does not specify that he or other employees must report their usernames and passwords when returning the laptops. Therefore, there is no specific performance this Court could plausibly compel from Kreyling based on the "four corners" of the alleged contract. Any ambiguity about this subject must be construed against Plaintiffs, the drafters of the Agreement. *Scoville Court Condominium Ass'n v. Orozon*, 171 Ill. App.3d 932, 525 N.E. 2d 1109, 1110 (1st Dist. 1988). Count II should be dismissed with prejudice.

### c. Breach of Contract (Count III)

The essential elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff. *Gonzalzles v. Am. Exp. Credit Corp.*, 315 Ill. App. 3d 199, 206, 733 N.E.2d 345, 351 (2000).

In the Complaint, Plaintiff claims it has been and continues to be injured because it does not have Kreyling's username and password for the laptop. However, there are no facts that explain what injuries Plaintiff has incurred and no such facts exist. In addition, assuming *arguendo* that the Confidentiality Agreement is a valid and enforceable contract, it does not specify that one of Kreyling's duties is to remember and communicate the username and password he used while he worked with the laptop. Doc. 1-1. Plaintiff did not provide a means to return the laptop when Kreyling's employment ended and did not ask for a username and password until about five months after Kreyling stopped working for Plaintiff. Doc 1-1 p. 28/29 ("Exhibit B" to Complaint). Plaintiff cannot in good faith believe employees would remember their credentials for that long after their employment and should have had a mechanism in place to access its own property as needed. *See* Ex. 2 ¶¶ 4-6. According to the facts pleaded, Kreyling plainly has not retained any "Confidential Information" within the meaning of the alleged contract – all of the information is in Plaintiff's possession and has been since at least August 2023. As such, Count III must be dismissed with prejudice.

    d. **Conversion (Count IV)**

To sufficiently allege conversion a plaintiff must allege (1) the defendant's unauthorized and wrongful assumption of control, dominion or ownership over the plaintiff's personal property, (2) the plaintiff's right in the property, (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally and (4) the plaintiff's demand for possession of the property. *Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 282 Ill. App. 3d 1052, 1057, 668 N.E.2d 1129, 1133 (1996).

Plaintiff has not alleged facts to plausibly state a claim for conversion, especially with respect to the first element described above. The Complaint is devoid of facts that Kreyling has

maintained any control, dominion, or ownership of the laptop or its files. In fact, the opposite is true on the face of the complaint – Kreyling returned the laptop. Doc. 1-1 ¶ 26. Plaintiff has not alleged that Kreyling has retained any part of Plaintiff's property, so he has not legally converted anything of Plaintiff's over to himself. Plaintiff complains of being unable to access the laptop's files, but it has not alleged why it cannot use its privileges as owner and administrator of the laptop to bypass its former employee's now forgotten password. *See* Ex. 2 ¶¶ 4-9. Plaintiff also does not allege any facts about how it has been harmed under the circumstances. If anything, Plaintiff's potential failure to maintain access to its own property is Plaintiff's own negligence.

For all of these reasons, Plaintiff has failed to state a claim for Conversion and Count IV must be dismissed.

   e. **Trespass to Chattels (Count V)**

The tort of trespass to a chattel may be committed "by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Ogbolumani v. Young*, 2015 IL App (1st) 141930-U, ¶ 29. However, "there is no recognized cause of action in Illinois for a trespass to chattel claim based on trespass to an intangible such as digital information contained on a USB drive." *Id.* at ¶ 33. Digital information such as plaintiff's data files is not tangible personal property and therefore is not chattel. *Id.* at ¶ 33.

As noted above, Plaintiff has been in possession of the physical laptop since August 2023. Doc. 1-1 ¶ 26. Therefore, the only remaining trespass alleged is to the computer's files, which are the same digital information Illinois courts have found not to constitute chattel. For this reason alone, Plaintiff's Count V must be dismissed with prejudice. Moreover, Plaintiff has not alleged how it was actually damaged beyond stating that it "continues to suffer harm" due to not having access to the computer files. Plaintiff's bare allegation of any actual injury would not

support any damages at any time. *Ogbolumani* at ¶ 34 (trespass to chattel claim properly dismissed in part because no actual harm was alleged). Finally, there are no facts alleged to plausibly infer that Kreyling acted "intentionally" to harm Plaintiff (because such facts do not exist). For all of the above reasons, this Court must dismiss Count V with prejudice

  **f. Unjust Enrichment (Count VI)**

"The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Sherman v. Ryan*, 392 Ill. App. 3d 712, 734, 911 N.E.2d 378, 399 (2009). "Unjust enrichment is not an independent cause of action." *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25. While a plaintiff is permitted to plead unjust enrichment in the alternative to a breach of contract claim, unjust enrichment "is inapplicable where an express contract, oral or written, governs the parties' relationship." *Id.*

Plaintiff did not plead its Unjust Enrichment claim (Count VI) in the alternative to its Breach of Contract claim (Count III) and, in addition, expressly stated in Count VI that it required compliance with the alleged written contract as a core aspect of its unjust enrichment claim. Doc. 1-1 ¶ 84 ("Unless Kreyling is enjoined from further breaching his contractual obligations under the Confidentiality Agreement, NOCD will continue to suffer irreparable harm for which NOCD has no adequate remedy at law."). Unjust Enrichment, therefore, is not available to Plaintiff according to Plaintiff's own theory of the case. *Gagnon* at ¶ 25.

Moreover, Plaintiff has not pleaded any actual facts plausibly alleging that Kreyling was enriched in any way his by his alleged misconduct. Plaintiff has simply stated that Kreyling "was enriched" without any facts describing how that could be true, because there is no way Kreyling plausibly could have benefitted from the laptop once he was no longer employed with Plaintiff.

13

Kreyling does not even have the laptop, so the alleged continuing harm is entirely illogical. Consistent with Count V, Plaintiff has also failed to describe with any facts how it has been harmed under the circumstances of the case. For all of these reasons, Plaintiff has failed to state a cognizable or plausible claim for Unjust Enrichment and Count VI must be dismissed with prejudice.

## CONCLUSION

That Plaintiff resorted to suing Kreyling under the petty circumstances alleged in the Complaint, the timing of the suit, and the damages sought are all clear evidence this suit was brought in retaliation for Kreyling's wage suit against Plaintiff, which is conduct protected by the ICPA. This Court, therefore, should find Plaintiff's lawsuit to be a SLAPP, dismiss it with prejudice, and award Kreyling his reasonable attorneys' fees and costs spent defending and disposing of this matter. Alternatively, for the reasons set forth herein, this Court should dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and/or as the Court deems just.

WHEREFORE, Kreyling respectfully requests that this Court dismiss Plaintiff's complaint with prejudice and award Kreyling his attorneys' fees and costs to defend this lawsuit.

Respectfully submitted,

/s/ David Fish
One of Defendant's Attorneys

David J. Fish, dfish@fishlawfirm.com
Seth Matus, smatus@fishlawfirm.com
Workplace Law Partners, P.C.
111 East Wacker Drive, Suite 2300
Chicago, IL 60601
(312) 861-1800

**CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that the foregoing Motion was served upon all parties through counsel via the Court's CM/ECF electronic filing system on June 20, 2024.

                                      /s/ David Fish