# Exhibit 1

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

_____DELAWARE_____ County

**For Prothonotary Use Only:**

Docket No:

*TIME STAMP*

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

---

**SECTION A**

| **Commencement of Action:** |
| --- |
| ☒ Complaint   ☐ Writ of Summons   ☐ Petition |
| ☐ Transfer from Another Jurisdiction   ☐ Declaration of Taking |

Lead Plaintiff's Name: Jeremy Kreyling

Lead Defendant's Name: NOCD, Inc.

**Are money damages requested?**   ☒ Yes   ☐ No

Dollar Amount Requested: (check one)   ☐ within arbitration limits   ☐ outside arbitration limits

**Is this a *Class Action Suit*?**   ☐ Yes   ☒ No

**Is this an *MDJ Appeal*?**   ☐ Yes   ☒ No

Name of Plaintiff/Appellant's Attorney: Mary-Ellen H. Allen, Esquire

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

---

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your ***PRIMARY CASE***. If you are making more than one type of claim, check the one that you consider most important.

**SECTION B**

**TORT** (do not include Mass Tort)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (does not include mass tort)
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (do not include Judgments)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other _____
- ☐ Employment Dispute: Discrimination
- ☒ Employment Dispute: Other _____
- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

***Updated 1/1/2011***

**LAMB McERLANE PC**
By:     Mary-Ellen H. Allen          *Attorney for Plaintiff*
Attorney I.D. No. 83885
24 East Market Street , P.O. Box 565
West Chester, PA 19381-0565
(610) 430-8000
mallen@lambmcerlane.com

---

| | |
|---|---|
| JEREMY KREYLING | : IN THE COURT OF COMMON PLEAS |
| 63 Ivy Lane | : DELAWARE COUNTY, PENNSYLVANIA |
| Glen Mills, PA 19342 | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : CIVIL ACTION - LAW |
| NOCD, Inc. | : |
| 225 N. Michigan Avenue | : |
| Suite 1430 | : |
| Chicago, IL 60601 | : |
| | : NO. |
| Defendant. | : |

---

### NOTICE TO DEFEND

     You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the Plaintiffs. You may lose money or property or other rights important to you.

     **YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

DELAWARE COUNTY BAR ASSOCIATION
Lawyer Referral Service
335 W. Front Street
Media, PA  19063
(610) 566-6625

                 */s/ Mary-Ellen H. Allen*
                 Mary-Ellen H. Allen
                 *Attorney for Plaintiff*

**LAMB McERLANE PC**
By:    Mary-Ellen H. Allen                                    *Attorney for Plaintiff*
Attorney I.D. No. 83885
24 East Market Street , P.O. Box 565
West Chester, PA 19381-0565
(610) 430-8000
mallen@lambmcerlane.com

| | |
|---|---|
| JEREMY KREYLING<br>63 Ivy Lane<br>Glen Mills, PA 19342 | : IN THE COURT OF COMMON PLEAS<br>: DELAWARE COUNTY, PENNSYLVANIA<br>:<br>: |
| Plaintiff, | :<br>: |
| v. | :<br>: CIVIL ACTION - LAW |
| NOCD, Inc.<br>225 N. Michigan Avenue<br>Suite 1430<br>Chicago, IL 60601 | :<br>:<br>:<br>: |
| | : NO. |
| Defendant. | : |

## COMPLAINT

Plaintiff, Jeremy Kreyling, by and through his undersigned counsel, hereby files this Complaint against Defendant, NOCD, Inc. ("NOCD"), and in support thereof, avers as follows:

## PARTIES

1.    Plaintiff Jeremy Kreyling is an adult individual with a primary address of 63 Ivy Lane, Glen Mills, PA 19342.

2.    Defendant NOCD, Inc. is an Illinois corporation headquartered at 225 N. Michigan Avenue, Suite 1430, Chicago, IL 60601. Defendant NOCD, Inc. has employees who reside in and conduct business from Pennsylvania.

**JURISDICTION AND VENUE**

3. Jurisdiction and venue is proper in Pennsylvania as Defendant regularly conducts business in and has employees who work within the Commonwealth of Pennsylvania.

4. Venue is proper in Delaware County pursuant to Pennsylvania Rule of Civil Procedure 2179(a)(3) in that the cause of action arose in Delaware County.

5. Venue also is proper in Delaware County pursuant to Pennsylvania Rule of Civil Procedure 2179(a)(4) in that a transaction or occurrence from which this cause of action arose occurred in Delaware County.

**FACTS**

6. Defendant employed Kreyling in the position of Senior Vice President Enterprise Treatment and Analytics beginning May 24, 2021 through April 4, 2023.

7. In conjunction with this position, on or about May 3, 2021, Kreyling executed the offer letter, which is a written agreement that sets forth the parameters of Kreyling's employment with Defendant ("Offer Letter"). *A true and correct copy of the Offer Letter is attached hereto as Exhibit A.*

8. Pursuant to the Offer Letter, Defendant agreed to pay Kreyling certain compensation including bonus payments in the amount of 20% of Kreyling's salary to be paid out on a quarterly basis. *See Paragraph 3 of Exhibit A attached hereto.*

9. Pursuant to Paragraph 3 of the Offer Letter, Defendant agreed to pay Kreyling an "incentive bonus of 20% of your annual salary…Bonuses will be paid within 1 month after the close of the quarter, but only if you are still employed by the Company at the time of payment."

10. Defendant failed to pay Kreyling his bonus for the year 2022. He did not receive any quarterly payments nor did he receive an annual payment.

11.     Kreyling's base salary in 2022 was $225,000.00. Pursuant to the Offer Letter, the bonus in the amount of $45,000 should have been paid on a quarterly basis, but, in any event, should have been paid in full no later than January 31, 2023.

12.     Kreyling's performance during the course of his employment was exemplary.

13.     Consistent with the fact that Kreyling was a good performer, on or about March 23, 2023, the CEO of Defendant, Stephen Smith, asked Kreyling for a commitment that Kreyling would remain employed by the company for at least another 18 months.

14.     In response to this direct inquiry, Kreyling answered that he did not foresee remaining employed beyond the end of the calendar year. Had Mr. Smith not posed this direct question, Kreyling would not have provided this information.

15.     In response to Kreyling's honest answer that he did not foresee staying with the company beyond the end of the calendar year, Defendant terminated Kreyling and informed Kreyling that his last day of employment would be April 4, 2023.

16.     Despite the fact that Kreyling had no intention of leaving at the time Mr. Smith posed the question of whether Kreyling could commit to stay employed with the company, Defendant labeled the termination as a "resignation".

17.     Regardless of whether Kreyling's separation from employment was a termination or a resignation, Defendant owes Kreyling the bonus amounts for 2022 and the first quarter of 2023.

18.     Despite demands therefore, Defendant refused pay Kreyling the bonus amount of $45,000, which already was extremely overdue, and refused to pay Kreylig the bonus amount for the first quarter of 2023.

19. Defendant claims that Kreyling became subject to the executive bonus plan in 2022, which allegedly is paid annually instead of quarterly.

20. The purported executive bonus plan is not a plan. There is no writing or applicable terms and conditions. The only written agreement regarding Kreyling's bonus is set forth in the Offer Letter.

21. Defendant should have paid Kreyling his quarterly bonus during the first week of April of 2022, the first week of July of 2002, the first week of October of 2022 and during the first week of January of 2023.

22. Defendant owes Mr. Kreyling the entire bonus amount of $45,000.00 as well as the bonus for the first quarter of 2023 ($11,500).

23. Kreyling works remotely out of his home in Pennsylvania. As a Pennsylvania employee, he has grounds for a claim pursuant to the Pennsylvania Wage Payment and Collection Law ("WPCL") *43 P.S. §260.1 et seq.*

24. Bonus payments are considered "wages" under the law.

25. Kreyling earned the 2022 bonus and the 2023 first quarter bonus.

26. In failing to pay Kreyling, Defendant is in violation of the WPCL.

27. Despite repeated demands, Defendant, without justification and in bad faith, has failed and refuse to pay Kreyling the monies due and owing to him pursuant to the Offer Letter.

## COUNT I
## VIOLATION OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

28. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if fully set forth at length herein.

5

29. At all times material hereto, Kreyling was an "employee" of Defendant NOCD, Inc. as defined by the Pennsylvania Wage Payment and Collection Law ("WPCL"), *43 P.S. §260.1 et seq*.

30. At all times material hereto, Defendant was Kreyling's "employer" as defined by the WPCL, which Kreyling earned.

31. The foregoing monies due and owing to Kreyling constitute "wages" as defined by the WPCL.

32. To date, Defendant has failed and refused to pay Kreyling the wages to which he is contractually entitled under the Offer Letter.

33. Defendant's refusal to pay Kreyling is without justification and in bad faith, thereby entitling Kreyling to liquidated damages in the amount of twenty-five percent (25%) of the total wages due and owing to him under the Offer Letter pursuant to the WPCL.

34. As a direct and proximate result of Defendant's violation of the WPCL, Kreyling is entitled to all unpaid wages, liquidated damages, interest and costs in prosecuting this action, including his attorney's fees.

WHEREFORE, Plaintiff requests judgment be entered in his favor in an amount in excess of $50,000 together with liquidated damages, penalties, attorney's fees, costs, and such other relief as this Court deems appropriate.

## COUNT II
## BREACH OF CONTRACT

35. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully set forth at length herein.

36. Defendant NOCD, Inc. entered into a binding and enforceable Offer Letter.

37. The clear and unambiguous terms and conditions of the Offer Letter require Defendant to make timely bonus payments.

38. Despite repeated demands by Kreyling for payment, Defendant has failed, refused and neglected to tender payment in full and presently owes Kreyling $56,250.00 in arrearages.

39. The failure and refusal of Defendant to tender payment in full, as required under the Offer Letter, constitutes a breach of contract.

40. As a direct and proximate result of the breach of contract by Defendant, Kreyling has suffered substantial losses including, but not limited to $56,250.00, which represents unpaid amounts due under the Offer Letter.

WHEREFORE, Plaintiff requests judgment be entered in his favor in an amount in excess of $50,000 together with attorney's fees, costs, and such other relief as this Court deems appropriate.

Respectfully submitted,

**LAMB McERLANE PC**

Date: June 14, 2023     By:     */s/ Mary-Ellen H. Allen*
Mary-Ellen H. Allen
Attorney I.D. No. 83885
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565
(610) 430-8000
*Attorney for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Signature: */s/ Mary-Ellen H. Allen*
Mary-Ellen H. Allen
Attorney I.D. No.: 83885

## VERIFICATION

I, Jeremy Kreyling, verify and affirm that the facts in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements are subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Date: 06/12/2023

_____
Jeremy Kreyling

1

EXHIBIT A



**Personal and Confidential**

May 3, 2021

**Offer of Employment**

Dear Jeremy,

    I am pleased to offer you employment with NOCD, Inc. ("NOCD" or the "Company") in the role of SVP Enterprise Treatment Analytics. You will report directly to Robert Capobianco. Summarized below are the key terms of your employment offer:

    1.    <u>Start Date</u>. Your anticipated start date is May 24, 2021 or sooner depending on your availability.

    2.    <u>Compensation</u>. The Company will pay you a base salary of $200,000 less applicable payroll and income tax withholdings and paid in accordance with NOCD's payroll practices. Salary increases and adjustments thereafter will be issued at NOCD's sole discretion.

    3.    <u>Bonus.</u> You will be eligible for an incentive bonus of 20% of your annual salary less applicable payroll and income tax withholdings and paid in accordance with NOCD's payroll practices. The bonus will be awarded based on quarterly performance standards and/or milestone criteria established by your manager. Bonuses will be paid within 1 month after the close of the quarter, but only if you are still employed by the Company at the time of payment. Bonus adjustments thereafter will be at NOCD's sole discretion.

    4.    <u>Stock Options</u>. Subject to the approval of the Company's Board of Directors, you will be granted an option to purchase 15,000 shares of the Company's common stock. The options will be subject to the terms and conditions applicable to options granted under the Company's 2018 Equity Incentive Plan, as described in that plan and the applicable stock option agreement, which you will be required to sign. Vesting of shares occur over a four (4) year period, with the first twenty-five percent (25%) of such shares vesting following twelve (12) months of continued employment or service, and the remaining shares vesting in equal monthly installments over the following thirty-six (36) months. The exercise price per share will be equal to the fair market value per share on the date the option is granted, as determined by the Company's Board of Directors in good faith compliance with applicable guidance in order to avoid having the option be treated as deferred compensation under Section 409A of the Internal Revenue Code of 1986, as amended.

You will also be eligible for an additional 15,000 share grant if the company is able to increase the current average allowed amount (self-pay members and healthcare payer reimbursements) by a minimum of 25%. The current hourly average allowed amount is $120. This rate will be known as the baseline rate amount (Exhibit A). An increase of 25% would move this to $150 calculated using the methodology in Exhibit A.

| Exhibit A: Example Calculation for Average Hourly Allowed Amount | | |
|---|---|---|
| **A** | **B** | **C = B ÷ A** |
| Total Therapy Hours | Total Amount Payable by Self-Pay Patients and Health Payers | Average Hourly Amount |
| 1,200 | $144,000 | $120 |

5.	<u>Compliance with Company Policies</u>. You will be expected to comply with all applicable NOCD employment policies and practices as in effect from time to time, including all policies set forth in the Company's employee handbook, and which will be made available to you after the commencement of your employment.

6.	<u>Work Location</u>. Your primary place of business will be your home and you will be considered a remote employee.

7.	<u>Benefits; Paid Time-Off</u>. During your employment with the Company, you will be eligible to participate in the Company's employee benefit programs commensurate with your level, subject to the terms and conditions of such programs and plans and applicable law. The Company reserves the right to change or terminate its policies, programs and benefit plans at any time.

NOCD has an Open PTO (Paid Time Off) policy, in which full-time, salaried exempt employees are afforded the flexibility to take vacation, take time off for illness, and shift schedules as necessary with manager approval.

NOCD has a 401(k) program where you will be eligible to participate after your first 3 months with the company. NOCD does not currently offer a company contribution match.

NOCD offers competitive healthcare coverage from a major carrier and supports 70% of the cost of coverage for employees and 50% for family members through June 30, 2021. The company coverage will increase to 75% for employees and 70% for family members as of July 1, 2021. NOCD also offers dental and vision insurance.

8.	<u>Prior Restrictions</u>. The Company does not permit its employees to use any trade secrets or other proprietary information of third parties in the course of performing their duties for the Company. Accordingly, during your employment with the Company, you may not disclose to the Company or use, or induce the Company to use, any trade secrets or other proprietary information of others, including any prior employer. By signing below, you represent that you are free of any contractual obligations that would prohibit you from accepting this offer or limit or preclude you from performing your duties during your employment with the Company.

9.	<u>Other Requirements; Restrictive Covenant Agreements</u>. The Company's offer of employment is contingent upon your successful completion of verification of the facts you have provided for employment and for I-9 purposes. The Company's offer of employment is further contingent on your execution and delivery to the Company of a Confidentiality, Non-Solicitation and Inventory Assignment Agreement. In addition, the company reserves the right to execute background and drug screening checks.

10.	<u>Miscellaneous</u>. This offer letter is governed by Illinois law, without regard to choice of law principles. This offer letter may be executed in counterparts, which together shall constitute one document. Signatures may also be transmitted by facsimile or .pdf, and such facsimile or .pdf copies of signatures shall be acceptable as originals for all purposes. If any portion of this letter is deemed void or unenforceable, the remainder of the letter shall be enforced without regard to the invalid portion.

**<u>Should you accept this offer, your employment with NOCD will be at-will.</u> You or the Company may terminate the employment relationship at any time for any reason or no reason, with or without notice. This letter is not a contract, agreement or promise of employment for any specific duration, nor is it a guarantee of any particular compensation.** If you would like to accept this offer of employment, you must sign below and return this letter to me on or before May 7, 2021. We look forward to welcoming you to NOCD.

Sincerely,

Larry Trusky
COO

Signature:

*Jeremy A Kreyling*
Jeremy A Kreyling (May 4, 2021 11:43 EDT)

Jeremy Kreyling

Date: May 4, 2021

SSN: _____

DOB: _____

Address: 63 Ivy Lane
Glen Mills, PA 19342

# NOCD Offer Letter - Jeremy Kreyling

Final Audit Report  2021-05-04

| | |
|---|---|
| Created: | 2021-05-04 |
| By: | Larry Trusky (larry@nocdhelp.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAO18AvzCEUNoqG964tBrfDlDwQ2YrF8fv |

## "NOCD Offer Letter - Jeremy Kreyling" History

- Document created by Larry Trusky (larry@nocdhelp.com)
  2021-05-04 - 2:40:00 AM GMT- IP address: 71.201.108.94

- Document emailed to Jeremy A Kreyling (kreyling@gmail.com) for signature
  2021-05-04 - 2:40:26 AM GMT

- Email viewed by Jeremy A Kreyling (kreyling@gmail.com)
  2021-05-04 - 2:43:04 AM GMT- IP address: 66.102.8.83

- Document e-signed by Jeremy A Kreyling (kreyling@gmail.com)
  Signature Date: 2021-05-04 - 3:43:14 PM GMT - Time Source: server- IP address: 72.94.255.39

- Agreement completed.
  2021-05-04 - 3:43:14 PM GMT

Adobe Sign